ASSOCIATED MECHANICAL CONTRACTORS, INC. v. HARRY E. PAYNE, JR., COMMISSIONER OF LABOR OF NORTH CAROLINA

No. 9410SC362

(Filed 21 February 1995)

**1. Administrative Law and Procedure § 72 (NCI4th)— agency decision—sufficiency of findings—de novo review**

Where plaintiff's assignments of error were sufficient to raise only the issue of whether an order of the Safety and Health Review Board was supported by the findings of fact, appellate review of the Review Board's order was *de novo*.

**Am Jur 2d, Administrative Law §§ 639 et seq.**

**2. Labor and Employment § 33 (NCI4th)— serious OSHA violation—proof required**

To sustain a serious OSHA violation, the Commissioner of Labor must show (1) the violative condition created the possibility of an accident, (2) a substantial probability that death or serious physical harm could result if an accident did occur as a consequence of the violation, and (3) either the employer knew or a reasonably prudent employer would have known that the violation existed.

**Am Jur 2d, Plant and Job Safety—OSHA and State Laws §§ 94-119.**

What constitutes "serious" violation under §§ 17 (b) and (k) of Occupational Safety and Health Act of 1970 (29 USCS §§ 666 (b) and (j)). 45 ALR Fed. 785.

3. **Labor and Employment § 33 (NCI4th)— OSHA violation— willfulness**

A determination of willfulness of an OSHA violation requires the application of a subjective standard to determine employer knowledge, that is, what the employer knew and not what a reasonable employer should have known.

**Am Jur 2d, Plant and Job Safety—OSHA and State Laws §§ 94-119.**

What constitutes "willful" violation for purposes of §§ 17 (a) and (e) of Occupational Safety and Health Act of 1970 (29 USCS §§ 666 (a) and (e)). 31 ALR Fed. 551.

4. **Labor and Employment § 33 (NCI4th)— repeated OSHA violations—combined designations**

A repeated OSHA violation occurs when there is a subsequent violation by the same employer substantially similar to a prior violation or violations when the employer knew or should have known of the standard by virtue of one or more prior citations. Violations carrying a combination of designations, *i.e.*, willful-serious, are established by evidence supporting both designations.

**Am Jur 2d, Plant and Job Safety—OSHA and State Laws §§ 94-119.**

When has employer "repeatedly" violated Occupational Safety and Health Act within meaning of § 17 (a) of Act (29 USCS § 666 (a)). 41 ALR Fed. 146.

5. **Labor and Employment § 34 (NCI4th)— OSHA safety violation —conclusion of seriousness—insufficient findings**

Findings by the Safety and Health Review Board supported its conclusion that plaintiff employer committed an OSHA violation by failing to adequately instruct its employees in the recognition and avoidance of unsafe conditions where the Review Board found that the employer conducted safety meetings with its employees and maintained safety manuals at the work site but that the training was "insufficient." However, the Review Board's findings were insufficient to support its conclusion that the vio-

lation was serious where there were no findings that the employer's failure to adequately instruct its employees created a substantial probability that death or serious physical harm could result if an accident did occur or that the violation actually caused its employee's death.

**Am Jur 2d, Plant and Job Safety—OSHA and State Laws §§ 94-119.**

**What constitutes "substantial evidence" within meaning of § 6 (f) of the Occupational Safety and Health Act (29 USCS § 655 (f)) providing that the Secretary of Labor's determinations shall be conclusive if supported by substantial evidence in the record considered as a whole. 25 ALR Fed. 150.**

6. **Labor and Employment § 34 (NCI4th)— trench sloping— OSHA violation—conclusion of willfulness—insufficient findings**
   Findings by the Safety and Health Review Board were insufficient to support its conclusion that plaintiff employer's serious violation of the OSHA sloping requirements for trench excavation was willful where there was no finding that the employer knew of the unstable soil condition at the site of the trench cave-in at issue.

   **Am Jur 2d, Plant and Job Safety—OSHA and State Laws §§ 94-119.**

   **What constitutes "substantial evidence" within meaning of § 6 (f) of the Occupational Safety and Health Act (29 USCS § 655 (f)) providing that the Secretary of Labor's determinations shall be conclusive if supported by substantial evidence in the record considered as a whole. 25 ALR Fed. 150.**

Appeal by plaintiff from order entered 3 November 1993 in Wake County Superior Court by Judge Donald W. Stephens. Heard in the Court of Appeals 12 January 1995.

*Patton, Boggs & Blow, L.L.P., by Richard D. Conner and Lawrence J. Gillen, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Ralf F. Haskell and Assistant Attorney General Ranee S. Sandy, for the State.*

GREENE, Judge.

Associated Mechanical Contractors, Inc. (AMC) appeals from the trial court's order affirming the decision of the North Carolina Safety and Health Review Board (the Review Board) sustaining a citation for violating the sloping requirements for trench excavation set forth in 29 C.F.R. § 1926.652(b) as willful-serious and imposing an $8,000.00 penalty and sustaining a citation for violating safety/training requirements set forth in 29 C.F.R. § 1926.21(b)(2) as serious and imposing a $560.00 penalty.

Harry E. Payne, Jr., the Commissioner of Labor (Commissioner) cited AMC for three different violations of North Carolina's Occupational Safety and Health standards (OSHA standards) and imposed penalties on AMC for those violations. The citations at issue on this appeal are as follows:

a) Citation One, Item 1, for willful-serious violation of 29 CFR 1926.21(b)(2) for failure to instruct its employees in the recognition and avoidance of unsafe conditions and the regulations applicable to the work environment (safety violation);

b) Citation One, Item 2, for willful-serious violation of 29 CFR 1926.652(b) for failure to slope, shore, sheet, brace, or otherwise support sides of trenches in soft or unstable material (trenching violation).

The citations arose out of a fatal accident, where Eddie Lemmons (Lemmons), an employee of AMC, was killed when a trench caved in on 24 April 1990, while AMC was constructing a water treatment facility for the city of Albemarle, North Carolina. In the course of the facility's construction, AMC was required to install an 18 inch gravity line to service the plant drains. In order to accomplish this, a piping crew dug several trenches, including the one that caved in which measured 12-13 feet deep, 5 feet wide at the bottom, 9 feet wide at the top, and 80 feet long. Lemmons was in this trench, making some final checks, when the sides of the trench caved in on him, killing him.

AMC denied the safety violation and denied the designation of the trenching violation as "willful," objected to the penalties and requested a hearing on its objection pursuant to N.C. Gen. Stat. § 95-137(b)(4). Hearing Examiner Koch (Koch) conducted this hearing, pursuant to N.C. Gen. Stat. § 95-135(i), and determined that the safety violation was not willful, but affirmed its designation as "serious," and further affirmed the trenching violation as willful-serious.

The Review Board granted AMC's petition for review, pursuant to N.C. Gen. Stat. § 95-135(i) and 24 NCAC 3 .0602(a).

### Safety Violation

The Review Board entered the following pertinent findings of fact on the issue of the safety violation:

12(B). Miller [the pipe foreman], Schramm [the project manager] and Blankenship [the project superintendent] admitted to Officer Collins that the training was insufficient.

12(C). [AMC] furnished and maintained a safety manual at the project site which included a section on excavation, trenching and shoring under 29 CFR 1926.650.

. . . .

12(E). [AMC] held safety meetings with a frequency of once a week to once every two weeks and these safety meetings included topics and training pertaining to trench operations.

. . . .

21. There was the possibility of an accident: the hazardous condition of the unstable soil was observable to a reasonable and prudent employer discharging the duty of safety to its employees.

22. The fatal injury sustained in the accident constituted prima facie evidence of the probability of injury. [Citations omitted.]

### Trenching Violation

The Review Board entered the following pertinent findings of fact on the issue of the trenching violation:

11(N). The soil in which this trench was dug was unstable soil.

. . . .

11(P). [AMC] had dug other trenches on this project which went to depths of 12 feet. All of the trenches on this project had nearly vertical walls; . . . .

11(R). Approximately one month prior to the accident of April 24, 1990, one of [AMC's] employees, Doug Hatley, was covered up to his knees when a portion of the trench in which he was working caved in. This occurred on the same project. Hatley informed Blankenship about this incident. [AMC] became safety conscious

for some period of time, and started sloping the trenches. [AMC] then returned to the procedure of excavating the trenches with near vertical walls.

11(S). Blankenship was present at another incident wherein Hatley and another employee were hit in the head by pieces of the trench wall which was falling off. Blankenship informed the employees to stay in the middle of the ditch. The walls of this trench were vertical.

. . . .

11(Y). Mike Blankenship was present on the project during the times the trenches were dug.

[1]   The Review Board finally sustained the trenching violation as willful-serious and the safety violation as serious. AMC appealed the Review Board's order to the Wake County Superior Court, pursuant to N.C. Gen. Stat. § 150B-43, which affirmed the Review Board's order. On appeal to this Court AMC entered two assignments of error and made several arguments in its brief in support of reversing the trial court. Because of the lack of specificity of the assignments of error, N.C.R. App. P. 10(c)(1) (assignments must state "plainly . . . the basis upon which error is assigned"), we read them as only raising the issue of whether the order of the Review Board is supported by the findings of fact, an argument made in AMC's brief. *See In re Morrison*, 6 N.C. App. 47, 49, 169 S.E.2d 228, 230 (1969) (appeal from order presents issue of whether it is supported by findings of fact). Accordingly, our review of the Review Board's order is *de novo. Brooks v. Ansco & Assocs.*, 114 N.C. App. 711, 717, 443 S.E.2d 89, 92 (1994). Our review is further limited in that AMC, in its brief, does not contest the seriousness of the trenching violation. N.C.R. App. P. 28(a) (review is limited to questions presented in brief).

---

The issues presented are whether the Review Board's findings of fact support its conclusion that (I) AMC committed a serious safety violation; and (II) AMC willfully violated the trenching standard.

The Commissioner may designate violations of the Occupational Safety and Health Act of North Carolina (OSHANC) as repeated, willful, serious, or nonserious or a combination of these designations. N.C.G.S. § 95-138 (1993); *see O.S. Steel Erectors v. Brooks, Comm'r. of Labor*, 84 N.C. App. 630, 637, 353 S.E.2d 869, 874 (1987) (affirming a "willful-serious" citation).

Although OSHANC only defines the term "serious," a nonserious violation exists where "there is a direct and immediate relationship between the violative condition and occupational safety and health but not of such relationship that a resultant injury or illness is death or serious physical harm." Mark A. Rothstein, *Occupational Safety and Health Law* § 312, at 332 (3d ed. 1990) (hereinafter *Rothstein*); Stephen A. Bokat & Horace A. Thompson III, *Occupational Safety and Health Law* 263 (1988) (hereinafter *Bokat*).

[2] A "serious violation" exists:

> if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use at such place of employment, unless the employer did not know, and could not, with the exercise of reasonable diligence, know of the presence of the violation.

N.C.G.S. § 95-127(18) (1993); *Brooks, Comm'r of Labor v. Grading Co.*, 303 N.C. 573, 584, 281 S.E.2d 24, 31 (1981) (discussing the standard for serious violations in North Carolina). Thus, to sustain a serious violation, the Commissioner must show (1) the violative condition created the possibility of an accident, (2) "a substantial probability that death or serious physical harm could result if an accident did occur" as a consequence of the violation, *Id.* at 584-86, 281 S.E.2d at 31-32, and (3) that either the employer knew or a reasonably prudent employer would have known that the violation existed. *See Daniel Constr. Co. v. Brooks*, 73 N.C. App. 426, 430, 326 S.E.2d 339, 342 (1985).

[3] "[A] violation of an OSHA standard is willful if the employer deliberately violates the standard," which requires a voluntary act done with either " 'intentional disregard of or plain indifference' to the requirements of the standard." *Ansco & Assocs.*, 114 N.C. App. at 717, 443 S.E.2d at 92. "An employer's knowledge of the standard and its violation," although necessary to establish willfulness, is not conclusive evidence on this issue. *Id.; Bokat* at 271; *Rothstein* § 315, at 341-44. Employer knowledge can be constructive in that a supervisor's knowledge of the violative condition can be imputed to the company/employer. *Ansco & Assocs.*, 114 N.C. App. at 717, 443 S.E.2d at 92. Willfulness is not established by mere "[c]arelessness, lack of diligence in discovering a violation, [or] impotent efforts to eliminate a hazard," although "a conscious disregard for OSHA requirements,

and the substitution of other measures believed to be as safe as OSHA standards constitutes" willfulness. *Rothstein* § 315, at 344. Thus, the determination of willfulness requires the application of a subjective standard to determine employer knowledge, that is what the employer knew, and *not* what a reasonable employer should have known.

[4] A repeated violation exists where there is a "subsequent violation by the same employer substantially similar to a prior violation or violations" when the employer knew or "should have known of the standard by virtue of the prior citation or citations." *Grading Co.*, 303 N.C. at 590, 281 S.E.2d at 34. Violations carrying a combination of designations, i.e., willful-serious, are established by evidence supporting both designations. *See O.S. Steel Erectors*, 84 N.C. App. at 634, 353 S.E.2d at 873 (evidence supporting serious designation combined with evidence supporting willful designation to support willful-serious designation).

A hearing examiner, who is appointed by the chairman of the Review Board, hears evidence and makes determinations on proceedings instituted before the Review Board, including objections to citations issued by the Commissioner. N.C.G.S. § 95-135(i) (1993). If a petition for review of the hearing examiner's determination is made to the Review Board within 30 days of the hearing examiner's determination, the Review Board "shall schedule the matter for hearing, on the record, except the [Review] Board may allow the introduction of newly discovered evidence, or in its discretion the taking of further evidence upon any question or issue." *Id.*; 24 NCAC 3 .0602(d). Thus, on review the Review Board is not bound by either the findings of fact or conclusions entered by the hearing officer. *Cf. Robinson v. J. P. Stevens*, 57 N.C. App. 619, 627, 292 S.E.2d 144, 149 (1982) (Full Industrial Commission "upon reviewing an award by the hearing commissioner . . . may reconsider evidence and adopt or reject findings and conclusions of the hearing commissioner"); *compare* N.C.G.S. § 97-85 (1991) *with* N.C.G.S. § 95-135(i) (1993) (giving similar authority to The Safety and Health Review Board and The Industrial Commission).

I

Safety Violation

[5] The question here presented is whether the findings of the Review Board support its conclusion that the safety violation was

serious. This necessarily requires a two-part analysis: was there a safety violation by AMC and if so, was it serious. The findings indicate that AMC conducted safety meetings with the employees and maintained safety manuals at the project site. The findings also reveal, however, that the training was "insufficient." Thus the findings, taken together, support the conclusion that there was a safety violation in that the employer failed to adequately instruct the employees in the "recognition and avoidance of unsafe conditions." 29 C.F.R. § 1926.21(b)(2) (1994).

On the question of whether the violation was serious, we agree with AMC that the findings do not support such a conclusion. The finding that the pipe foreman, the project manager and the project superintendent "admitted . . . that the training was insufficient," satisfies the requirement that the employer know or should have known that a violation existed. *Ansco & Assocs.*, 114 N.C. App. at 717, 443 S.E.2d at 92 (supervisor's knowledge can be imputed to the company/employer). There are, however, no findings by the Review Board that the failure to adequately instruct the employees created a "substantial probability that death or serious physical harm could result if an accident did occur." The Review Board appears to have been of the opinion, as reflected in its finding of fact number 22, that if a death occurs on the job site, there is established a prima facie case of the "substantial probability" element. We disagree. The prima facie case is established only if it is shown that the violation "actually caused" the death. *Brooks, Comm'r of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 467, 372 S.E.2d 342, 347 (1988). In this case, there are no findings that suggest that the failure of AMC to adequately instruct its employees caused the death. Furthermore, there are no findings that there existed, as a consequence of the failure to instruct, a "substantial probability that death or serious physical harm could result if an accident did occur." We do not suggest that there is not some evidence in the record to support such a finding, but only that such a finding was not made.

Having determined that the Review Board was correct in determining that there was a safety violation and incorrect in its determination that that violation was serious, we reverse the trial court's affirmation of the Review Board's determination that the safety violation is serious. This matter is accordingly remanded to the trial court for remand to the Review Board for the entry of an order designating the safety violation as nonserious. The Board shall on remand enter a new sanction consistent with the redesignation of the violation.

II

Trenching Violation

**[6]** For the purpose of this analysis AMC does not dispute that it has committed a serious violation of the trenching standard which requires it to shore, sheet, brace, slope or otherwise support the sides of trenches in unstable or soft material if the trench is 5 or more feet in depth. 29 C.F.R. § 1926.652 (1994). The only question is whether the findings of the Review Board support its conclusion that the trenching violation was willful.

To support the conclusion that AMC's trenching violation was willful, the findings must show that AMC knew the soil in the trench which caved in was "unstable or soft" and that AMC failed to comply with the trenching standard for unstable soil. The cave-in which occurred one month prior to the accident at issue, of which the project superintendent was made aware, provided sufficient notice to AMC that the soil on the project site was, at least in places, unstable. There is not, however, a finding by the Review Board, nor can we infer from the notice provided by the earlier cave-in, that AMC knew the soil surrounding the trench which caved in on 24 April 1990 was unstable. Furthermore, we cannot infer AMC's knowledge that the soil was unstable at the site of the cave-in from the admission that AMC committed a serious violation of the trenching standard. As noted earlier, a serious violation can be sustained on either the knowledge by the employer of a violative condition or on the basis that a reasonably prudent employer would have known that the violative condition existed. Because there is no finding that AMC knew of the unstable soil condition at the site of the cave-in at issue, the Review Board's findings of fact cannot support its conclusion that the trenching violation was willful.

Having determined that the Review Board was incorrect in its conclusion that the trenching violation was willful, we reverse the trial court's affirmation of the Review Board's determination that the trenching violation was willful. Because AMC does not contest that a serious trenching violation occurred, we remand this matter to the trial court for remand to the Review Board for the entry of a new sanction consistent with a serious violation.

WEHRLEN v. AMICA MUT. INS. CO.

[118 N.C. App. 64 (1995)]

Safety Violation—Reversed and remanded.

Trenching Violation—Reversed and remanded.

Judges EAGLES and WALKER concur.