ASSOCIATED MECHANICAL CONTRACTORS, INC., PETITIONER v. HARRY E. PAYNE, JR., COMMISSIONER OF LABOR OF NORTH CAROLINA, RESPONDENT

No. 141PA95

(Filed 8 March 1996)

1. **Appeal and Error § 340 (NCI4th)— assignments of error— specificity**

Although petitioner could have written its assignments of error in a more efficient manner, the assignments of error were sufficiently specific to meet appellate standards. N.C. R. App. P. 10(c)(1).

**Am Jur 2d, Appeallate Review §§ 544, 578.**

2. **Administrative Law and Procedure § 65 (NCI4th)— final agency decision—misinterpretation of statutory term—de novo review**

Where petitioner asserts that the Safety and Health Review Board misinterpreted the statutory term "willful" in deciding that petitioner committed a willful violation of OSHA trenching regulations, the proper standard of review for this question is *de novo*, and the reviewing court, pursuant to N.C.G.S. § 150B-2(4), may substitute its judgment for that of the Review Board if the Board's decision was affected by an error of law. N.C.G.S. § 150B-51(b)(4).

**Am Jur 2d, Administrative Law §§ 582, 620.**

3. **Administrative Law and Procedure § 67 (NCI4th)— final agency decision—sufficiency of evidence—whole record test**

Where petitioner asserts that the evidence was insufficient to support the Safety and Health Review Board's conclusion that a safety/training violation was "serious," the proper standard of review for this question is the "whole record test" to determine the sufficiency of the evidence. N.C.G.S. § 150B-51(b)(5).

**Am Jur 2d, Administrative Law §§ 585, 619.**

4. **Administrative Law and Procedure § 65 (NCI4th)— test for willfulness—standard for review—improper terminology— proper review**

A superior court judge conducted a proper review in concluding that the Safety and Health Review Board used the correct test for willfulness in deciding that petitioner committed a willful violation of OSHA trenching regulations, and the fact that the judge called his review the whole record test rather than *de novo* would not have changed the outcome since he did not find an error of law.

**Am Jur 2d, Administrative Law §§ 614, 619.**

5. **Labor and Employment § 33 (NCI4th)— trenching violation—test for willfulness**

The Safety and Health Review Board did not commit an error of law in defining willfulness when evaluating petitioner's OSHA trenching violation where the Review Board stated that a violation is willful if "there is shown a deliberate purpose not to dis-

charge some duty necessary to the safety of persons, or property of another," and the Review Board also determined that in order to show willfulness, there must be (1) employer knowledge of a violative condition, (2) employer knowledge of the standard, (3) a subsequent violation of the standard, and (4) commission of the violation voluntarily or with intentional disregard of the standard or with demonstrated plain indifference to the Occupational Safety and Health Act.

**Am Jur 2d, Plant and Job Safety—OSHA and State Laws § 114.**

6. **Labor and Employment § 34 (NCI4th)— safety/training violation—test for seriousness**

Petitioner's safety/training violation in failing to instruct its employees in the recognition and avoidance of unsafe conditions and the regulations applicable to the work environment was "serious" if there existed (1) the possibility of an accident resulting from petitioner's failure to instruct and (2) the substantial probability that death or serious physical harm could result if an accident did occur.

**Am Jur 2d, Plant and Job Safety—OSHA and State Laws § 83.**

7. **Labor and Employment § 34 (NCI4th)— trench cave-in—serious safety/training violation—supporting evidence in whole record .**

The record as a whole supported the Safety and Health Review Board's determination that petitioner's safety/training violation was "serious" where an employee of petitioner was killed in a trench cave-in; the walls of the trench had not been properly sloped; there was testimony that some training had taken place, but the testimony of both the employees and management shows the inadequacy of the training; supervisors of the trench site admitted that the training provided was insufficient; the evidence shows that without adequate training, employees were unable to recognize the dangerousness of the situation and the instability of the soil; and there was evidence that a cave-in in a trench of the dimensions here involved was substantially certain to cause death or serious physical harm to whoever was in the trench.

**Am Jur 2d, Plant and Job Safety—OSHA and State Laws § 72, 83, 113.**

ASSOCIATED MECHANICAL CONTRACTORS v. PAYNE

[342 N.C. 825 (1996)]

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 118 N.C. App. 54, 453 S.E.2d 545 (1995), reversing and remanding an order entered by Stephens (Donald W.), J., on 5 November 1993 in Superior Court, Wake County, which affirmed a decision of the North Carolina Safety and Health Review Board. Heard in the Supreme Court 12 February 1996.

*Patton Boggs, L.L.P., by Richard Conner and Lawrence J. Gillen, for petitioner-appellee.*

*Michael F. Easley, Attorney General, by Ralph F. Haskell, Special Deputy Attorney General and Ranee S. Sandy, Assistant Attorney General, for respondent-appellant.*

FRYE, Justice.

In the instant case, we must determine whether the Court of Appeals was correct in its evaluation of an order of the superior court sitting in review of a final decision of an administrative agency. We conclude that the Court of Appeals erred in its review of the superior court's order and that the superior court did not err in affirming the final decision of the North Carolina Safety and Health Review Board (Review Board).

In the spring of 1990, petitioner, Associated Mechanical Contractors, Inc. (AMC), was constructing a wastewater treatment plant in Albemarle, North Carolina. As part of the construction process, AMC excavated trenches for the purpose of laying pipe. On 24 April 1990, one of these trenches collapsed, causing the death of a worker, Eddie Lemmons. This trench was twelve to thirteen feet deep, five feet wide at the bottom, nine feet wide at the top, and eighty feet long. It ran through a shale formation called ardulite, which is layered and very unstable when lying at an angle. The crew had been digging in this material for two days when the accident occurred.

The evidence presented before the Occupational Safety and Health Administration (OSHA) hearing examiner disclosed that the walls of the trench which collapsed were not sloped at the thirty-five- to forty-five-degree angle required by OSHA trenching standards but had only the natural and inadvertent sloping which occurred from digging the trench. On the afternoon of the accident, Eddie Lemmons was working in the trench when the east wall caved in. The cave-in occurred in two stages. First, the bottom of the east wall collapsed

into the trench and pinned Lemmons against the west wall. Second, the top of the east wall fell, covering Lemmons with approximately a dump truck load of soil and rock. Workers on the site uncovered Lemmons in approximately eleven minutes. A local emergency medical unit pronounced Lemmons dead at the site.

Both parties presented expert witnesses who disagreed about whether the work crew should have recognized the potential danger that the unsloped trench presented.

Following the accident, OSHA conducted an on-site investigation and cited AMC for three violations of OSHA standards. Two of the three violations, specifically AMC's safety/training violation and trenching violation, are at issue on this appeal. The safety/training violation was designated as "willful-serious" "in that respondent failed to instruct its employees in the recognition and avoidance of unsafe conditions and the regulations applicable to the work environment." The trenching violation, also designated as "willful-serious," was for "failure to slope, shore, sheet, brace, or otherwise support sides of trenches in soft or unstable material."

AMC objected to the citations and requested a hearing pursuant to N.C.G.S. § 95-137(b)(4). The contractor denied the safety/training violation and objected to the classification of the trenching violation as "willful-serious." On 31 October 1991 and 10 January 1992, Hearing Examiner Richard Koch conducted a hearing pursuant to N.C.G.S. § 95-135(i). He reduced the safety/training violation from "willful-serious" to "serious" and affirmed the trenching violation as "willful-serious." AMC petitioned the Review Board. The Review Board, in its 29 January 1993 order, affirmed the violations as determined by the hearing examiner. AMC then appealed the Review Board's order, pursuant to N.C.G.S. § 150B-43, to Wake County Superior Court. Judge Donald Stephens, after reviewing the entire record, affirmed the final agency decision of the Review Board in a final order dated 3 November 1993 and filed 5 November 1993. AMC then appealed to the Court of Appeals. The Court of Appeals reversed the superior court order and remanded to that court for further remand to the Review Board. The Court of Appeals ordered that the safety/training violation be reclassified as "nonserious" and the trenching violation as "serious." On 1 June 1995, this Court allowed the Commissioner's petition for discretionary review.

[1] The Commissioner first argues that the Court of Appeals erred by not dismissing AMC's appeal because the assignments of error were

not specific enough to meet appellate standards. The Commissioner contends that AMC's appeal should be dismissed for failure to comply with North Carolina Rule of Appellate Procedure 10(c)(1), which states in pertinent part that

> assignments of error upon which an appeal is predicated shall be stated . . . in short form without argument . . . . Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumenta- tion the legal basis upon which error is assigned. An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references.

N.C. R. App. P. 10(c)(1) (1996). The Court of Appeals concluded that the assignments of error lacked specificity but did not dismiss the appeal. *Associated Mechanical Contractors v. Payne*, 118 N.C. App. 54, 59, 453 S.E.2d 545, 548 (1995).

In its appeal to the Court of Appeals, AMC made the following assignments of error:

1.1   the Superior Court committed error of law in its Final Order concerning the trench excavation citation by conducting a whole record test instead of *de novo* review and affirming a Final Agency Decision which affirmed an error of law by the hearing examiner; and

1.2   the Superior Court erred in its Final Order concerning the safety/training citation by not taking into account the signif- icant contradictory evidence, and evidence from which con- flicting inferences could be drawn, when determining the substantiality of evidence supporting the Final Agency Decision.

While recognizing that AMC could have written its assignments of error in a more efficient manner, we disagree with the Commissioner and Court of Appeals that the assignments, as written, are so lacking in specificity that they cannot be answered. Accordingly, we reject the Commissioner's first argument.

We next consider AMC's contention that the Court of Appeals used an improper standard when reviewing the order of the superior court. The Court of Appeals stated that "because of the lack of speci- ficity of the assignments of error, . . . we read them as only raising the

issue of whether the order of the Review Board is supported by the findings of fact." As we concluded earlier, petitioner's assignments of error did not lack specificity; therefore, we must now determine the correct standard of review for considering petitioner's assignments of error.

N.C.G.S. § 95-141 governs judicial review of the Review Board's administrative decisions. The statute indicates that the courts shall conduct judicial review in accordance with Article 4 of the State Administrative Procedure Act. N.C.G.S. ch. 150B, art. 4 (1995). The proper standard of review under Article 4 is as follows:

> [T]he court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b). In this case, we are concerned with two of the standards listed: (4) to determine whether the Review Board's decision concerning the trenching violation was affected by an error of law, and (5) to determine whether the Review Board's decision concerning the safety/training violation was supported by substantial admissible evidence in view of the entire record.

[2] " 'When the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ *de novo* review.' " *Brooks v. McWhirter Grading Co.*, 303 N.C. 573, 580-81, 281 S.E.2d 24, 29 (1981) (quoting *In re Appeal of N.C. Sav. & Loan League*, 302 N.C. 458, 465, 276 S.E.2d 404, 410 (1981)). AMC asserts that the Review Board misinterpreted the statutory term "willful" in deciding

that the contractor committed a willful violation of OSHA trenching regulations. The proper standard of review for this question is, therefore, *de novo*. The reviewing court, pursuant to N.C.G.S. § 150B-2(4), may substitute its judgment for that of the Review Board if the Board's decision was affected by an error of law.

**[3]** In contrast, AMC asserts that, as to the safety/training violation, the superior court erred by affirming the Review Board's final decision because it was unsupported by substantial evidence in view of the entire record. AMC is not contending that the Review Board's interpretation of the statutory term "serious" is incorrect. Rather, AMC claims that the evidence was insufficient to support the classification of "serious." The proper standard of review for this question is the "whole record test" to determine the sufficiency of the evidence:

> The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*. On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.

*Thompson v. Wake Co. Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citation omitted).

Thus, the proper standards of review are (1) *de novo* to determine whether the Review Board used the proper legal test for the statutory term "willful" as applied to the trenching violation, and (2) the whole record test to determine the sufficiency of the evidence to support the conclusion that the safety/training violation was "serious." These are the standards of review that should have been employed by the superior court sitting in appellate review of the final decision of the Review Board.

**[4]** In the instant case, petitioner's assignment of error 1.1 asked the Court of Appeals to determine whether the superior court, with reference to the trenching violation, erred in conducting a whole record test rather than a *de novo* review. The Court of Appeals did not

ASSOCIATED MECHANICAL CONTRACTORS v. PAYNE

[342 N.C. 825 (1996)]

answer this question. Accordingly, we must determine whether Judge Stephens used the correct standard of review.

AMC is correct that *de novo* is the proper standard of review for this question and is further correct that Judge Stephens conducted a whole record test. As previously stated, a *de novo* review in this context means that, pursuant to N.C.G.S. § 150B-2(4), the reviewing court can substitute its judgment for that of the Review Board *only if the Board has committed an error of law*. Since Judge Stephens specifically concluded that the Review Board did not commit an error of law, there was no need for him to substitute his judgment for that of the Board. He concurred with the Review Board's final decision by concluding that the correct legal test for willfulness had been applied. After carefully reviewing Judge Stephens' order, we conclude that Judge Stephens conducted a proper review, regardless of the terminology, and that the fact that he called his review the whole record test instead of *de novo* would not have changed the outcome, since he did not find an error of law.

**[5]**  We next consider whether Judge Stephens correctly concluded that the Review Board used the proper definition of willfulness when evaluating AMC's trenching violation. This Court has said that a violation is deemed willful when there is shown " 'a *deliberate purpose not to discharge some duty necessary to the safety of the person or property of another.*' " *Brewer v. Harris*, 279 N.C. 288, 297, 182 S.E.2d 345, 350 (1971) (quoting *Foster v. Hyman*, 197 N.C. 189, 191, 148 S.E. 36, 37 (1929)) (emphasis added); *see also O.S. Steel Erectors v. Brooks*, 84 N.C. App. 630, 631, 353 S.E.2d 869, 871 (1987). As stated by the Court of Appeals in a recent case:

> [A] violation of an OSHA standard is willful if the employer deliberately violates the standard. A deliberate violation is one *"done voluntarily with either an intentional disregard of or plain indifference"* to the requirements of the standard. Mark A. Rothstein, *Occupational Safety and Health Law* 315 at 343 (3d ed. 1990). An employer's knowledge of the standard and its violation, although not alone sufficient to establish willfulness, is one of the most effective methods of showing the employer's intentional disregard of or plain indifference to the standards.

*Brooks v. Ansco & Assoc.*, 114 N.C. App. 711, 717, 443 S.E.2d 89, 92 (1994) (citations omitted) (emphasis added).

The Review Board, in its discussion of AMC's violations, stated that a violation is willful if "there is shown a deliberate purpose not to discharge some duty necessary to the safety of persons, or property of another." The Review Board also determined that in order to show willfulness, there must be (1) employer knowledge of a violative condition, (2) employer knowledge of the standard, (3) a subsequent violation of the standard, and (4) the violation being committed voluntarily or with intentional disregard of the standard or with demonstrated plain indifference to the Occupational Safety and Health Act. The definition and elements used by the Review Board are consistent with the definitions of willfulness expounded by this Court and quoted above. Accordingly, we conclude that Judge Stephens did not err in concluding that the Review Board did not commit an error of law in defining willfulness when evaluating AMC's trenching violation.

[6] We next consider petitioner's assignment of error 1.2, which concerns AMC's safety/training violation. AMC asked the Court of Appeals to determine whether the superior court erred in concluding that there was sufficient evidence, when reviewing the record as a whole, to support the safety/training violation's classification as "serious." As with petitioner's assignment of error 1.1, the Court of Appeals, because it found the assignments of error insufficient, did not make this determination. As stated above, the standard of review for this question is the whole record test.

Pursuant to statute,

[a] "serious violation" shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use at such place of employment, unless the employer did not know, and could not, with the exercise of reasonable diligence, know of the presence of the violation.

N.C.G.S. § 95-127(18) (1993). This Court has interpreted this statute to mean that a violation is serious if there is "(1) the *possibility* of an accident resulting from the conditions at the work site and (2) the *substantial probability* that death or serious physical harm could result if an accident did occur." *Brooks*, 303 N.C. at 584, 281 S.E.2d at 31. The safety/training violation at issue consisted of AMC's failure to instruct its employees in the avoidance and recognition of unsafe

conditions and the regulations applicable to the work environment necessary to control or eliminate hazards or exposure to injury. Applying the *Brooks* standard, AMC's safety/training violation was "serious" if there existed (1) the *possibility* of an accident resulting from AMC's failure to instruct and (2) the *substantial probability* that death or serious physical harm could result if an accident did occur.

[7] We now turn to Judge Stephens' order to determine whether he erred in concluding that there was sufficient evidence when examining the record as a whole to support the Review Board's classification of the violation as serious. Judge Stephens concluded that "[t]here was sufficient competent evidence of record to support the Board's findings of fact" and that these findings supported proper conclusions of law. After examining the evidence in the record, including contradictory evidence, we conclude that Judge Stephens did not err.

The Review Board was presented with a multitude of evidence that showed that AMC failed to properly train its employees, that this failure created the possibility of an accident, and that there was a substantial probability that the accident would result in death or serious physical injury.

The following evidence was presented through employees of AMC who testified at the hearing: (1) several workmen could not articulate the proper trenching procedures, had little knowledge of OSHA standards, and stated that they had received little training on the proper procedure and soil types; (2) although the walls on all the trenches at this site were vertical, employees were not taught to use the variety of safety techniques that would prevent cave-in; (3) employees who were aware of the dangerousness of the trenching condition and the instability of the soil on this project asked supervisors about it and were ignored; (4) the employee who was responsible for conducting safety meetings had not been trained on how to conduct them; and (5) after a cave-in on a previous project, AMC became safety-conscious for a couple days but then went back to "normal operating" and abandoned trenching safety procedures such as sloping and shoring.

There was also evidence presented through Carl Collins, an OSHA Safety Compliance Officer for the North Carolina Department of Labor, who investigated the accident. Collins found that the company had attempted some training, but the personnel on site were not knowledgeable enough to conduct the training. Although AMC had

been on this site for months before the accident, corporate safety personnel had not inspected the site for compliance, and their first visit was after the accident. AMC's safety manual was created before the accident but not given to laborers, pipe fitters, or the pipe fitters' foreman on this project prior to the date of the accident. Collins found that two employees had not been trained at all and that others had not been trained to properly recognize and avoid hazardous conditions. Collins concluded that the cave-in occurred because of (1) the lack of sloping of the trench, (2) the lack of training of the workers on the site, (3) the lack of proper equipment, and (4) the inadequate supervision of the trenching operation. He further concluded that AMC had a "willful disregard" for the OSHA training standard, and that AMC did not make a "substantial effort" to train its employees as required.

The Review Board adopted the following summarized findings of the Hearing Officer to support the classification of the safety/training violation as "serious":

15. AMC had not trained either of the two employees who worked in the trench which caved in.

16. The project supervisor, pipe foreman and project manager admitted to Collins that the training was insufficient.

17. AMC furnished and maintained a safety manual at the project site that included a section on excavation, sloping, and shoring.

18. AMC instructed its employees that they could refuse to enter a trench they considered unsafe, but employees felt that refusing to enter a trench might jeopardize their employment.

19. AMC held safety meetings with a frequency of once a week to once every two weeks and these safety meetings included topics and training pertaining to trenching operation.

20. AMC's pipe foreman and project supervisor conducted the safety meetings which were of or related to trenching.

22. At the point of the accident, the trench which collapsed and killed worker Eddie Lemmons was 12.5 feet deep, 5 feet wide at the bottom, 9 feet wide at the top and approximately 80 feet long.

ASSOCIATED MECHANICAL CONTRACTORS v. PAYNE

[342 N.C. 825 (1996)]

29. Approximately one month prior to the accident, one of AMC's employees was covered up to his knees when a portion of a trench he was working in caved in. This occurred on the same project, and AMC became safety conscious for a while but returned to the practice of making trenches with vertical walls.

30. The project supervisor was aware of this cave-in as well as a potential cave-in on the project.

32. AMC's employees had informed the management that they thought the trenches were unsafe prior to the cave-in that killed Lemmons.

39. The hazardous condition of the unstable soil was observable to a reasonable and prudent employer discharging the duty of safety to its employees.

Applying the whole record test, the reviewing court, in determining the substantiality of evidence supporting the Board's decision, must take into account evidence which both supports and detracts from that decision. As the Court stated in *In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 923 (1979), "[t]he 'whole record' test is not a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence."

We conclude, based on the whole record, that the Review Board's decision that the safety/training violation was "serious" has a rational basis in the evidence. The evidence shows that the lack of proper training created the possibility of an accident and that, if an accident did occur, there was a substantial probability of death or serious physical harm. Although there was testimony that some training had taken place, the testimony of both the employees and the management shows the inadequacy of the training. In fact, the supervisors at the site admitted that the training provided was insufficient. Without adequate training, employees were unable to recognize the dangerousness of the situation and the instability of the soil. A cave-in in a trench of the dimensions here involved was substantially certain to cause death or serious physical harm to whoever was in the trench. Accordingly, we conclude that Judge Stephens was correct in concluding that there was sufficient evidence to support a safety/training violation classification of "serious."

For the foregoing reasons, we reverse the decision of the Court of Appeals and remand to that court for further remand to the superior court for reinstatement of Judge Stephens' order.

REVERSED AND REMANDED.