MARY HEDGEPETH, Petitioner v. NORTH CAROLINA DIVISION OF SERVICES FOR THE BLIND, Respondent

No. COA02-165

(Filed 5 November 2002)

**1. Jurisdiction— agency review—law of the case**

Respondent Division of Service for the Blind's jurisdictional challenge is overruled because it did not seek review of the earlier decision of the Court of Appeals holding that the superior court had jurisdiction to hear petitioner's appeal from an agency's final decision, making it the law of the case.

**2. Public Assistance— final agency decision—individualized written rehabilitation program—joint development of plan—consideration of employee's capabilities**

The trial court did not err by affirming the Division of Services for the Blind's final agency decision denying petitioner's request to amend her individualized written rehabilitation program (IWRP) even though petitioner alleges the agency's decision to unilaterally discontinue education assistance was illegal when IWRPs must be jointly developed and that the alleged unilateral changing of the IWRP was done without consideration of the employee's capabilities, because: (1) presuming the agency's decision to offer only job placement was unilateral, petitioner's signature on the last IWRP amendment as well as her failure to challenge the action for ten weeks constitute a waiver; and (2) the agency considered petitioner employee's capabilities since it worked with petitioner during a twelve-year period and knew of her capabilities, and there is substantial evidence that the agency considered her employable.

**3. Public Assistance— final agency decision—individualized written rehabilitation program—job placement services—education**

The trial court did not err by affirming the Division of Services for the Blind's final agency decision denying petitioner's request to amend her individualized written rehabilitation program (IWRP) even though petitioner contends the agency's contention that petitioner is employable coupled with its decision to provide only job placement services violates the Rehabilitation Act, federal regulations, and the agency's policy, because: (1) there is no indication that the agency ever suspended its efforts

to maximize petitioner's employment and the Rehabilitation Act does not stand for the proposition that petitioner was entitled to assistance in receiving the best possible education, 29 U.S.C. § 701(b)(1); (2) the employment outcome test under 34 C.F.R. § 361.56 is only applicable to an agency's decision to terminate services altogether, and the agency continued to provide job placement services to petitioner; (3) there is no set guideline as to what level of education the agency is responsible for assisting individuals to obtain; and (4) the agency's finding that petitioner was employable after having helped petitioner to achieve two associate degrees and participate in a rehabilitation program was supported by competent evidence.

**4. Public Assistance— final agency decision—individualized written rehabilitation program—arbitrary and capricious standard**

A whole record review reveals that the trial court's decision affirming the Division of Services for the Blind's final agency decision denying petitioner's request to amend her individualized written rehabilitation program (IWRP) was not arbitrary and capricious, because the testimony of the agency's counselors show that the agency never terminated its services to petitioner and that its decision to discontinue funding of petitioner's education was based upon proper determinations of petitioner's performance and employability.

Appeal by petitioner from order signed 14 September 2001 by Judge Frank R. Brown in Nash County Superior Court. Heard in the Court of Appeals 9 October 2002.

*Eastern Carolina Legal Services, by Hazel Mack-Hilliard, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Diane Martin Pomper, for respondent-appellee.*

TYSON, Judge.

Mary Hedgepeth ("petitioner") obtains review through this Court's grant of a writ of certiorari to the trial court's order that affirmed the final agency decision of the Division of Services for the Blind ("Agency") denying petitioner's request to amend her Individualized Written Rehabilitation Program ("IWRP"). We affirm the trial court's order.

## I. Facts

Petitioner began losing her eyesight in 1985 due to congenital cataracts, while she was enrolled in a legal secretary curriculum at Nash Community College. On 8 October 1985, petitioner applied for services from the Agency. She was accepted as a candidate for Vocational Rehabilitation ("VR") services pursuant to 34 C.F.R. § 361.42. On 2 January 1986, petitioner entered into the first IWRP agreement which stated that petitioner's vocational goal was "Occupations in Business", that the Agency would provide various services, and that plaintiff's goal would be completed by January of 1989. Petitioner graduated with an Associate Degree in Business in the Spring of 1988. Thereafter, she worked with Comfort Inn as a night auditor. She left after a month because her employer could not accommodate her visual impairment.

On 3 March 1989, petitioner and the Agency agreed to amend petitioner's IWRP. The amendment states the goal to be "Business Administration" and provides for petitioner to obtain additional training at the Rehabilitation Center for the Blind, ("Center"). Petitioner attended classes at the Center. While enrolled, petitioner was evaluated by two consulting psychologists. One classified her academic abilities to be in the "low average range," and the other reported her I.Q. to be "quite above average."

On 1 August 1989, a second IWRP amendment was adopted which stated a new vocational goal of "paralegal." In 1990, a third amendment to the IWRP was made which stated a vocational goal of "Social Work," which petitioner and the Agency representatives understood to include a four-year degree. The services under this amendment included a work-study program at Edgecombe Community College. Petitioner did not take any courses at Edgecombe Community College between 1990 and 1995.

In February of 1993, petitioner started working part-time with the Opportunities Industrialization Center in Rocky Mount, as a Case Manager/Assistant Coordinator. She was terminated after 23 months while on sick leave.

Petitioner informed the Agency that she wished to pursue a four year degree in social work. On 26 July 1995, petitioner requested financial assistance from the Agency. A fourth IWRP amendment was agreed to on 11 October 1995 which stated the vocational goal to be "Social Work Assistant" and provided that petitioner was to obtain an

associate degree in social work from Edgecombe Community College. A four-year degree was not required for this goal. The Agency agreed to cover the costs. The ending date for this plan was August of 1997. Petitioner graduated and obtained her second associate degree in the summer of 1997.

Thereafter, petitioner was accepted at North Carolina Wesleyan College where she planned to further her studies in social work. In September of 1997, petitioner met with the Agency to discuss petitioner's future. At the meeting, the Agency advised petitioner that they would help her find employment but they would not pay for additional education. Petitioner wanted the Agency to help pay for her further schooling at North Carolina Wesleyan. Petitioner and Agency executed a fifth amendment to the IWRP to reflect petitioner's vocational goal as "Occupations in Social Work." Educational tuition was not included in this amendment.

On 8 December 1997, petitioner wrote the Agency to request further amendment of her IWRP to show a vocational goal of a Licensed Professional Counselor. A Masters Degree in counseling or a graduate degree in a related field, two years of counseling experience, and passing a licensing test are required to meet this vocational goal. On 12 December 1997, the Agency wrote petitioner denying the request. On 26 January 1997, petitioner sent a written request for appeal of the Agency's decision. On 18 May 1998, Agency issued a final agency decision denying petitioner's appeal. On 21 June 1999, the superior court affirmed the final agency decision. On 29 July 1999, petitioner appealed to this Court. On 6 March 2001, this Court issued an opinion reversing the superior court's order and remanding for a more specific order in accordance with the opinion. *Hedgepeth v. N.C. Div. of Servs. for the Blind*, 142 N.C. App. 338, 543 S.E.2d 169 (2001). On 14 September 2001, the superior court entered an order on remand. On 17 December 2001, petitioner's petition for writ of certiorari was filed with this Court and was granted on 27 December 2001.

## II. Issues

Petitioner argues that the superior court erred in (1) affirming certain findings and conclusions by the agency that unilaterally discontinued educational assistance to petitioner and refused to amend petitioner's work plan goal to complete a four-year degree in order to pursue professional counseling, without considering petitioner's capacity and capabilities, and (2) affirming that the Agency's decision was based on (a) relevant laws, (b) substantial evidence, and (c) was

neither arbitrary nor capricious. The Agency counters that this appeal should be dismissed on the grounds that this Court's prior holding that the superior court had jurisdiction was erroneous.

### III. Jurisdiction

**[1]** The Agency contends that the superior court did not have jurisdiction. Since this is a threshold issue and significantly impacts any other arguments raised, we address it first. The Agency argues that petitioner's reliance on 29 U.S.C. § 722 to provide a remedy is misplaced as the U.S. Code provision was enacted after the agency decision. There was no clear path to judicial review under the prior version of the U.S. Code.

We held in the prior appeal that the superior court had jurisdiction to hear petitioner's appeal from the Agency's final decision as the proceeding was sufficient to constitute a "contested case". *Hedgepeth v. N.C. Div. of Servs. for the Blind*, 142 N.C. App. 338, 345, 543 S.E.2d 169, 174 (2001).

The Agency contends that the issue of subject matter jurisdiction can be raised at any time. Because the Agency did not seek review of the earlier decision of this Court, it is the law of the case. *See Save Our Rivers, Inc. et al v. Town of Highlands, et al*, 341 N.C. 635, 638, 461 S.E.2d 333, 335 (1995) (although the holding of the Court of Appeals had been overruled in a subsequent case, it was res judicata and remained the law of the case). The Agency's jurisdictional challenge is overruled.

### IV. The Rehabilitation Act

The purpose of the Rehabilitation Act is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." 29 U.S.C.A. § 701(b)(1) (West Supp.1995). The Rehabilitation Act authorizes grants to states to provide vocational rehabilitation to individuals with disabilities. *Buchanan v. Ives*, 793 F.Supp. 361, 363 (D.Me.1991). State participation is voluntary, but those states choosing to participate must comply with federal regulations. *Id.* The purpose of the vocational rehabilitation program of the Act is to assist states in providing "services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, and capabilities, so that such individuals may prepare for and engage in gainful employment." 29 U.S.C.A. § 720(a)(2) (West Supp.1995). [FN1] The scope of vocational

services provided is defined in 29 U.S.C.A. § 723(a) (West Supp.1995), which states: "Vocational rehabilitation services provided under this chapter are any goods or services *necessary* to render an individual with a disability employable. . . ." (Emphasis added.)

*Zingher v. Department of Aging and Disabilities*, 664 A.2d 256, 259 (Vt. 1995). The Rehabilitation Act was amended in 1998, after petitioner's incident occurred.

## V.  Unilateral Decision without Determination of Capabilities

### A.  Unilateral Decision

[2] Petitioner contends that the Agency's decision to discontinue education assistance was unilateral and illegal. Petitioner cites the Rehabilitation Act to require an IWRP and its amendments to be "jointly developed" and agreed to by a VR counselor and the individual. *See* Development of the Individualized Written Rehabilitation Program, 34 C.F.R. 361.45 (1997). Petitioner contends that the plan was not "jointly developed" and asserts that the Agency made a unilateral decision to offer "job placement" only to petitioner prior to meeting with petitioner and discussing the change.

The statute contemplates jointly developed amendments to IWRPs. "[J]ointly" implies "equal participation and involvement on the part of the client and counsellor [sic] in the development of an IWRP." *Buchanan v. Ives*, 793 F. Supp. 361, 366 (D. Me. 1991). The two cases of *Tourville v. Office of Educational Services for Individuals with Disabilities, New York State Education Department*, 663 N.Y.S.2d 368 (N.Y. App. Div. 1997) and *Barbee v. Office of Educational Services for Individuals with Disabilities, New York Education Department*, 650 N.Y.S.2d 488 (N.Y. App. Div. 1996) are illustrative. The New York Supreme Court held that "choice" did not mean the disabled individuals had complete control over the programs and that IWRPs were to be jointly developed by the eligible individual and the VR counselor. *Id.* Petitioner cites these cases to support the premise that neither the disabled individual nor the VR counselor can individually have complete control over the programs.

We agree that IWRPs must be "jointly developed." Petitioner's IWRP and its five amendments *were jointly developed* between petitioner and the counselors and specialists of the Agency in the meeting of 24 September 1997. Presuming the Agency had already decided

to offer only "job placement" does not change the fact that the petitioner agreed to the proposed amendment.

Petitioner testified that she felt overwhelmed during the meeting by the presence of three counselors, was forced to sign the new amendment, and was in a vulnerable state due to her father's recent death and her own health problems. Petitioner presented this evidence at the agency hearing. The hearing officer found that petitioner failed to object until 10 weeks after having signed the amendment.

The question over whether the IWRP amendment was jointly developed is a question of fact. The "whole record test" limits our review of the Agency's findings of fact. *Hearne v. Sherman*, 350 N.C. 612, 614, 516 S.E.2d 864, 866 (1999). The "whole record" review "does not allow the reviewing court to replace the . . . [agency's] judgment as between two reasonably conflicting views," but requires the court to review all the evidence and determine whether substantial evidence in the record supports the decision. *Associated Mechanical Contractors v. Payne*, 342 N.C. 825, 832, 467 S.E.2d 398, 401 (1996) (citation omitted). The hearing officer's factual determination that the IWRP and amendments were jointly developed is supported by substantial evidence in the record.

Presuming the agency's decision to offer only job placement was unilateral, petitioner's signature on the last IWRP amendment as well as her failure to challenge the action for 10 weeks constitute a waiver. We affirm the agency's finding that the IWRP amendment of 24 September 1997 was developed jointly.

### B. Consideration of Petitioner's Capabilities

Petitioner also argues that the Agency in unilaterally deciding to offer petitioner "job placement" only, neglected to consider petitioner's capabilities. Petitioner cites the Rehabilitation Act, which requires "each Individualized Written Rehabilitation Program shall be designed to achieve the employment objective of the individual consistent with the unique strengths, resources, priorities, concerns, abilities, and capabilities of the individual." 29 U.S.C. § 722 (b)(1)(B) (1997). The Act also requires that IWRPs "be reviewed annually, at which time such individual . . . will be afforded an opportunity to review such program and jointly redevelop and agree to its terms." 29 U.S.C. § 722(b)(2) (1997).

Petitioner cites 34 C.F.R. 361.45(c)(2)(ii)(B) for the requirement that the Agency consider the individual's personality, career interests,

educational achievements, personal and social adjustments, and employment opportunities. According to 34 C.F.R. 361.45(c)(2)(ii)(B), these factors are not requirements but *may* be used to identify rehabilitation needs and develop the IWRP where preparation is based on a *comprehensive assessment.* Petitioner has not contended that she falls within the category of those needing a comprehensive assessment nor are these actual requirements but mere guidelines.

Petitioner argues that the unilateral changing of the IWRP was done without consideration of employee's capabilities. Because we hold that there was substantial evidence supporting the finding that the amendment to the IWRP was "jointly developed," there has been no unilateral action by the Agency. The Agency worked with petitioner during a 12-year period and knew of her capabilities. There is substantial evidence that the Agency considered her employable. Because the purpose of the Rehabilitation Act as of 1992 was "to empower [individuals] to maximize employment, . . ." there is no reason to find that the Agency's actions were improper. 29 U.S.C. § 701(2)(b)(1) (1992).

## VI. Agency's Decision Does Not Violate the Law

[3] Petitioner asserts that the Agency's contention that petitioner is employable coupled with its decision to provide only job placement services violates the Rehabilitation Act, Federal Regulations, and the Agency's policy. Alleged errors of law are appropriate for *de novo* review. *Hedgepeth v. N.C. Div. of Servs. for the Blind,* 142 N.C. App. 338, 346, 543 S.E.2d 169, 174 (2001).

Petitioner argues that the Federal Rehabilitation Act requires *maximized employment* consistent with petitioner's strengths, resources, priorities, concerns, abilities, capabilities, and informed choice. 29 U.S.C. § 701(b)(1). There is no indication that the Agency ever suspended its effort to maximize petitioner's employment. The counselors at the Agency agreed that petitioner was employable and continued to aid in her search for her employment. The Rehabilitation Act does not stand for the proposition that petitioner was entitled to assistance in receiving the best possible education. *Zhinger v. Department of Aging and Disabilities,* 664 A.2d 256 (Vt. 1995); *Campbell v. Office of Vocational and Educational Services for Individuals with Disabilities, et al.,* 682 N.Y.S.2d 694 (N.Y. App. Div. 1998).

Petitioner asserts that "employment outcome" can only be achieved if all four elements of 34 C.F.R. § 361.56 are met, and that the

Agency fails to meet these. The Agency argues that this test is only applicable to an agency's decision to terminate services altogether. We agree. The Agency continued to provide job placement services to petitioner. The Agency has not violated the statute, and need not show an "employment outcome" as it never terminated its benefits, just its tuition assistance for further education.

Petitioner asserts that VR services are designed to enable one to reach his highest achievable vocational goal and not merely find "suitable employment" and that the Agency has failed to provide her with her highest achievable vocational goal by refusing to provide tuition assistance for a degree program to which she had already been admitted. Petitioner relies on *Polkabla v. Commission for the Blind and Visually Handicapped of the New York State Dep't of Social Services*, 583 N.Y.S.2d 464 (N.Y. App. Div. 1992).

*Murphy v. Office of Vocational and Educational Services for Individuals with Disabilities*, 705 N.E.2d 1180, 1183-1184 (N.Y., 1998) distinguished *Polkabla*.

> First, the aspirational rhetoric regarding "highest level of achievement" is not a standard expressed in the Act itself. In addition, the Appellate Division's reasoning in Polkabla is distinguishable in part because it was decided just prior to the 1992 amendments—the latter even removed the statutory language relied on by that court when it held that VESID [Vocation and Educational Services for Individuals with Disabilities] must "maximize" "employability".

*Murphy v. Office of Vocational and Educational Services for Individuals with Disabilities*, 705 N.E.2d 1180, 1183-84 (N.Y. 1998) (quoting *Polkabla* at 464 (emphasis added)). We find no error in the Agency and superior court interpretation of the Rehabilitation Act, particularly in light of the 1992 amendments to the Act.

Petitioner asserts that similar VR recipients in other states were only denied financial assistance after having at least completed a bachelor's degree to support her contention that she deserves financial assistance to receive another degree. *See Romano v. Office of Vocational and Educational Services for Individuals with Disabilities et al.*, 636 N.Y.S.2d 179, 180 (N.Y. App. Div. 1996); *Murphy v. Office of Vocational and Educational Services for Individuals with Disabilities et al.*, 705 N.E.2d 1180 (N.Y. 1998); *Campbell v. Office of Vocational and Educational Services for*

*Individuals with Disabilities et al.*, 682 N.Y.S.2d 694 (N.Y. App. Div. 1998). There is no set guideline as to what level of education the Agency is responsible for assisting individuals to obtain.

Petitioner contends that the Agency did not follow through on a promise to assist her in obtaining a four-year degree. While that plan was admittedly discussed with the Agency, petitioner offered no evidence of Agency's pre-approval to pay for the education.

The Agency, through its counselors, testified at the hearing that the policy objectives for the Rehabilitation Act were understood. An Agency counselor researched what credit hours would transfer should petitioner enroll in a state university bachelor's program, and the probability of petitioner's successful completion of a master's program, required to obtain her newly desired goal of Licensed Professional Counselor. The Agency's finding that she was employable after having helped petitioner to achieve two associate degrees and participate in a rehabilitation program is supported by competent evidence. This finding of employability is bolstered by the fact that petitioner held a job for nearly two years before obtaining an associate degree in social work.

### VII. The Agency's Action was not Arbitrary or Capricious

**[4]** Petitioner contends that the action of the Agency in denying her request to amend the IWRP was arbitrary and capricious. The standard for determining whether an action was arbitrary or capricious is the "whole record" review. This Court cannot "override decisions within agency discretion when that discretion is exercised in good faith and in accordance with law." *Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989) (citations omitted).

"Agency actions have been found to be arbitrary and capricious when such actions are whimsical because they indicate a lack of fair and careful consideration; when they fail to indicate any course of reasoning and the exercise of judgment." *White v. N.C. Dept. of E.H.N.R.*, 117 N.C. App. 545, 547-48, 451 S.E.2d 376, 378 (1995) (quoting *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 420, 269 S.E.2d 547, 573, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980)).

In reviewing the whole record, we find insufficient evidence of an "arbitrary" or "capricious" action by the Agency. The testimony of the Agency's counselors show that the Agency never terminated its services to petitioner and that its decision to discontinue funding of peti-

tioner's education was based upon proper determinations of petitioner's performance and employability.

### VIII.  Conclusion

The Agency adopted the recommended decision of the hearing officer who made substantial findings of fact which support his conclusions of law. The superior court, pursuant to this Court's direction on remand, entered a specific order that stated its standards of review. The superior court applied the correct standards of review.

We affirm the decision of the superior court affirming the Agency's decision not to amend petitioner's IWRP.

Affirmed.

Judges McCULLOUGH and BRYANT concur.