N.C. DEPARTMENT OF CORRECTION v. JOHN R. HILL

No. 608PA84

(Filed 7 May 1985)

1. **Master and Servant § 10; State § 12— State employee—unlawful failure to offer employment—grievance letter**

    Although plaintiff's letter of formal grievance alleged specifically that he was wrongfully denied an Accountant IV position with the Department of Correction, other more general language in the letter was sufficient to permit plaintiff to raise objections to being denied positions which became available at the Accountant II and Accountant III levels. All that was required was a plain statement of the circumstances allegedly constituting an unlawful failure to offer employment so that respondent could be put upon its defense.

2. **Master and Servant § 10; State § 12— State employee—dismissal from exempt position—right to available job in State government**

    In G.S. 126-5(e), a statute relating to State employees dismissed from an exempt policy-making position, the phrase "such employee shall have priority

to any position that becomes available for which the employee is qualified" means that if the employee is qualified for a job in State government which is available, he must be offered this job before it can be filled by anyone else by promotion or otherwise.

**3. Master and Servant § 10; State § 12— State employee—dismissal from exempt position—right to available job in State government**

Where plaintiff's employment with the Department of Human Resources as an Accounting Manager I, which had been designated as an exempt policy-making position, was terminated as part of an internal reorganization, the Department of Correction reorganized its accounting section and created two new positions of Accountant II and Accountant III, and plaintiff was qualified to fill at least the Accountant II position, the Department of Correction was required to offer plaintiff this position, and the Department of Correction's internal promotion of an employee to fill this position was a violation of plaintiff's rights under G.S. 126-5(e).

Justice EXUM dissenting.

ON appeal from judgment entered by *Bailey, J.,* on 18 September 1984 in Superior Court, WAKE County, affirming decision and order of the State Personnel Commission. Plaintiff's petition for discretionary review prior to determination by the Court of Appeals was allowed 4 December 1984. Heard in the Supreme Court on 11 April 1985.

*Lacy H. Thornburg, Attorney General, by David E. Broome, Jr., Assistant Attorney General, for N.C. Department of Correction, appellant.*

*Broughton, Wilkins, Webb & Gammon, P.A., by William Woodward Webb, for appellee.*

MARTIN, Justice.

The parties to this action have stipulated to the following facts: John R. Hill began working for the State of North Carolina on 6 June 1975. During the summer of 1981 his position as Accounting Manager I, Chief of Budgeting and Accounting, Division of Social Services, North Carolina Department of Human Resources, became designated as "policy-making" and thereby exempt from certain provisions of statutes governing the State Personnel System, N.C.G.S. 126-1 through 126-79. N.C. Gen. Stat. § 126-5(d)(4) (1981). On 19 October 1981 Hill's employment with the Department of Human Resources was terminated effective 2 November 1981 as part of an internal reorganization. Hill

thereupon became eligible for "any position that becomes available for which [he] is qualified," within the meaning of N.C.G.S. 126-5(e):

> (e) If an employee with five or more continuous years of service to the State in a subject position either transfers, on or after January 8, 1977, to a position designated as exempt or who occupied a position that prior to January 8, 1977, was subject to the State Personnel Act and that position is declared exempt on or after January 8, 1977, upon leaving such designated position, for reasons other than just cause, such employee shall have priority to any position that becomes available for which the employee is qualified. No employee shall be placed in an exempt position without prior written notification that such position is so designated.

Through the Office of State Personnel (Office) Hill applied for available accounting positions in a number of state agencies. On 24 September 1982 the Office sent Mr. Hill's application to the Department of Correction (DOC). An Accountant IV position had become vacant at DOC in the summer of 1982 as a result of a retirement. By December 1982 Hill had contacted T. S. Ryon, Jr., Assistant Secretary for Management and Productivity at DOC, regarding his application. Ryon stated at the time that he was in possession of Hill's application and that Hill would be considered for the vacant accounting position. On or about 8 January 1983 Hill received a letter from Ryon, dated 29 December 1982, stating that because of a hiring freeze

> the fiscal section must keep one accountant position vacant for the foreseeable future. In keeping with the current workload and the freeze requirements we have reassigned duties, modified job descriptions and left one Accountant I position vacant to comply with our goals.
>
> If an accountant position becomes vacant and unfrozen we will contact you.

On 10 January 1983 an employee of DOC, Mr. Jerry Hodnett, informed Hill that what had happened was:

> [T]he accountant position had been filled by promoting an Accountant II into the Accountant IV position and by promoting an Accountant I into the vacant Accountant II position. Mr.

Hodnett also remarked that the Accountant IV position was being downgraded to an Accountant III position. This sequence of events, then, left the vacated Accountant I position available for the freeze list.

On 14 January 1983 Hill filed a formal grievance with the State Personnel Commission (Commission) protesting that DOC had not offered him a position. A hearing officer for the Commission adopted the parties' stipulations as part of his findings of fact and concluded that under N.C.G.S. 126-5(e) DOC should have offered Hill the Accountant II position instead of promoting someone internally to the slot. The full Commission affirmed this decision as did the superior court. DOC appeals the decision of the superior court pursuant to N.C.G.S. 7A-31.

[1] DOC raises three issues, the first being the question whether Hill's letter of formal grievance dated 14 January 1983 limits Hill only to an adjudication of the denial of his appointment to the Accountant IV position or, instead, whether the letter was sufficient to permit Hill to raise his objections to being denied the positions which became vacant at the Accountant II and Accountant III levels. It is undisputed that Hill filed his letter of grievance within thirty days of the notice from DOC. N.C. Gen. Stat. § 126-38 (1981). DOC argues, however, that the language of Hill's letter shows conclusively that he was protesting only the failure of his appointment to the Accountant IV position, and therefore he is precluded from appealing the denial of his appointment to the Accountant II and Accountant III positions. We disagree.

Although Hill's letter alleges specifically that he was wrongfully denied the Accountant IV position, other more general language in the letter was sufficient to put DOC on notice of the issues Hill would contest. As one leading scholar of administrative law has said, in the context of administrative procedure "[t]he most important characteristic of pleadings in the administrative process is their unimportance. . . . The fundamental purpose of pleading is to let each party know the other's position so that each can properly prepare." K. Davis, *Administrative Law Text* at 196 (3d ed. 1972). The Administrative Procedure Act does not require the particularity of the pleading of an indictment or a statement of the elements of a cause of action, as required at law or in equity, unless the proceedings are mandatory or penal

in nature.[1] *See Parrish v. Real Estate Licensing Board,* 41 N.C.
App. 102, 105, 254 S.E. 2d 268, 270 (1979). All that is required in
this proceeding is that there be a plain statement of the cir-
cumstances allegedly constituting an unlawful failure to offer
employment, so that respondent may be put upon its defense. *See
American Newspaper .Pub. Ass'n v. National Labor Rel. Bd.,* 193
F. 2d 782, 800 (7th Cir. 1951), *aff'd,* 345 U.S. 100, 97 L.Ed. 852
(1953). *Accord Owens-Corning Fiberglas Corporation v. N.L.R.B.,*
407 F. 2d 1357 (4th Cir. 1969). The extensive stipulations to which
Hill and DOC agreed amply show that DOC received adequate no-
tice through prehearing conferences and the discovery process of
the fact that Hill was also contesting DOC's refusal to offer him
either the Accountant II or the Accountant III position. As DOC
had actual notice and an opportunity to defend against these
claims, it cannot now challenge Hill's raising of these issues. *Cf.*
N.C. Gen. Stat. § 150A-31 (1983) (stipulations in a contested case
subject to the Administrative Procedure Act are binding on the
parties thereto); C. Koch, 1 *Administrative Law and Practice*
§ 5.4 (1985).

[2]   The second issue in this case concerns the scope of the term
"priority" in that part of N.C.G.S. 126-5(e) which reads "such
employee shall have priority to any position that becomes avail-
able for which the employee is qualified." DOC argues that the
term means "first consideration." Under this view an employee
such as Hill would be entitled merely to be considered ahead of
other applicants for positions available under N.C.G.S. 126-5(e). On
the other hand, under Hill's interpretation of the term the statute
gives an employee such as him the right to an automatic offer of a
position which becomes available. We agree with the latter inter-
pretation for the reasons which follow.

As this Court stated in *State ex rel. Utilities Commission v.
Public Staff,* 309 N.C. 195, 210, 306 S.E. 2d 435, 443-44 (1983):

> The cardinal principle of statutory construction is that
> the intent of the legislature is controlling. *In re Brownlee,*
> 301 N.C. 532, 272 S.E. 2d 861 (1981); *State v. Fulcher,* 294
> N.C. 503, 243 S.E. 2d 338 (1978); *Housing Authority v.
> Farabee,* 284 N.C. 242, 200 S.E. 2d 12 (1973). In ascertaining

---

1. *See* N.C. Gen. Stat. § 126-43 (1981) (the provisions of the Administrative
Procedure Act apply to the State Personnel System and hearing and appeal mat-
ters before the State Personnel Commission).

the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish. *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972).

While this Court will give due consideration to the Commission's interpretation of the statute, the final interpretation of statutory terms is a judicial function. *In re Community Association*, 300 N.C. 267, 266 S.E. 2d 645 (1980). *See Faizan v. Insurance Co.*, 254 N.C. 47, 118 S.E. 2d 303 (1961). An examination of the legislative history of N.C.G.S. 126-5(d) and (e) leads us to conclude that the Commission's determination that "priority" means the automatic right to appointment is correct.

Before 1975 the State Personnel Act contained no provisions exempting so-called policy-making positions from its coverage. N.C.G.S. 126-5(b) (Int. Supp. 1976) was the first statute to mention policy-making positions and to exempt them from the Act. N.C.G.S. 126-5(c) (Int. Supp. 1976) thereupon provided: "Any career employee who has occupied a position subject to the Personnel Act and who is replaced after the position is exempted . . . shall be provided with all possible assistance in being appropriately relocated in State government." This statute was revised and recodified under N.C.G.S. 126-5(e) in 1977, the effect of which changed the phrase "shall be provided with all possible assistance in being appropriately relocated" to "shall have priority to any position that becomes available." This shift in language clearly evinces an intent to change an employee's rights from mere entitlement to assistance in relocation to the entitlement to an offer of a job for which he is qualified once such an opening becomes available. Had the legislature meant for employees governed by the Act merely to be given first consideration for available positions it would not have changed the language of the statute in the way it did. Therefore, we hold that in N.C.G.S. 126-5(e) (1981) the phrase "such employee shall have priority to any position that becomes available for which the employee is qualified" means that if the employee is qualified for a job in state government which is available, he must be offered this job before it can be filled by anyone else, by promotion or otherwise.

[3] We now turn to the issue of whether DOC denied Mr. Hill an available position. The Commission adopted the deputy hearing

commissioner's conclusion that although the Accountant IV position was never available to Hill under N.C.G.S. 126-5(e), the Accountant II position was available and DOC violated Hill's rights under the statute by failing to offer him that position. We agree with these conclusions. Except for articles 6 and 7 of Chapter 126 of the General Statutes, the Act did not apply to the Accountant IV position because the position was designated as being a policy-making one. N.C. Gen. Stat. § 126-5(d)(4) (1981). Therefore, the position was not "available" to Hill under N.C.G.S. 126-5(e). However, when DOC reorganized its accounting section, it created two new positions, Accountant II and Accountant III, which are subject to the Act. Because Hill was qualified to fill at least the Accountant II position and it was available within the meaning of 126-5(e), DOC was required to offer Hill this position. DOC's internal promotion of an employee to fill this job was a violation of Hill's rights under 126-5(e), for which he was appropriately afforded redress by the Commission.

The judgment of the superior court is

Affirmed.

Justice EXUM dissenting.

With all respect to the majority's visual agility, my eye simply isn't quick enough to spot the vacancy which became available to Hill under N.C.G.S. § 126-5(e). I suppose the majority would concede that had there been no departmental reorganization of the accounting positions, there would have been no available position for defendant Hill to fill. This is so because the hiring freeze prohibited the Department from adding additional employees to positions which became vacant.

I don't see how the reorganization, as the majority asserts, created any additional positions for which new personnel could be hired. The reorganization simply redesignated the positions which certain accounting employees held. All accounting work necessary to be done was being done by the three remaining accountants. There would have been nothing for Hill to do had he been rehired. Even if a vacancy were somehow instantaneously created, because of the freeze the Department could not have offered defendant Hill a position without at least firing one of its

existing accounting employees. Had there been no freeze, Hill would probably have been entitled to the Accountant IV position.

As I read the majority opinion, N.C.G.S. § 126-5 operated to require the Department, in order to meet its obligations to Hill, either (1) to abstain from reorganizing and request that the hiring freeze be lifted or (2) if it did reorganize to get its work done in light of the freeze, to fire one of its existing accounting employees and rehire Hill. I am satisfied the legislature never intended such a result by the passage of this statute.

In order to get around this point, the State Personnel Commission concluded the reorganization was undertaken in part "with the impermissible consideration of allowing [the Department] to avoid its responsibility to" Hill. I find nothing in the record to support this conclusion. Indeed, it was the reorganization itself which the majority of this Court concludes mandated that Hill be hired.

I think the way properly to resolve this case is to hold that because of the hiring freeze and the reorganization necessitated by it no vacancy ever existed which was available to Hill under the statute.