BETSY JOHNSON POWELL, Petitioner v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent

No. 552PA96

(Filed 6 March 1998)

**1. Public Officers and Employees § 43 (NCI4th)— Director of Highway Beautification Program—policymaking exempt**

**2. Public Officers and Employees § 43 (NCI4th)— Director of Highway Beautification Program—designation as policymaking exempt—not impermissible patronage dismissal**

Assuming without deciding that the Director of the Highway Beautification Program (HBP) properly raised the issue as to whether the reclassification of her position as policymaking exempt constituted an impermissible patronage dismissal that violates the First Amendment to the U.S. Constitution under

**POWELL v. N.C. DEPT. OF TRANSPORTATION**

[347 N.C. 614 (1998)]

*Branti v. Finkel*, 445 U.S. 507 (1980), and *Elrod v. Burns*, 427 U.S. 347 (1976), the State Personnel Commission's conclusion that the Department of Transportation showed why a political confidant was necessary for the effective performance of this position was supported by evidence and findings that the Director of the HBP was the eyes and ears of the Governor, the Administration, and the Department of Transportation with respect to beautification and related issues. The Governor was entitled to decide, even on a partisan and political basis, who will be his or her spokesperson in carrying out the goals of the HBP.

Justice ORR dissenting.

Justice LAKE joins in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 124 N.C. App. 542, 478 S.E.2d 28 (1996), affirming an order entered by Stephens (Donald W.), J., on 6 September 1995 in Superior Court, Wake County. Heard in the Supreme Court 10 September 1997.

*Broughton, Wilkins, Webb & Sugg, P.A., by R. Palmer Sugg, for petitioner-appellee.*

*Michael F. Easley, Attorney General, by Grayson G. Kelley, Special Deputy Attorney General, Robert O. Crawford, III, Assistant Attorney General, and Sarah Ann Lannom, Associate Attorney General, for respondent-appellant.*

FRYE, Justice.

Both this case and a companion case, *N.C. Dep't of Transp. v. Hodge*, 347 N.C. 602, —— S.E.2d —— (1998), raise the issue of whether the Governor properly designated certain State employee positions as policymaking exempt under N.C.G.S. § 126-5.

[1] The issue in this case is whether the position of Director of the Highway Beautification Program (HBP) in the Department of Transportation (DOT) may be designated by the Governor as policymaking exempt pursuant to N.C.G.S. § 126-5. We must determine whether the Court of Appeals was correct in affirming an order of the superior court sitting in review of a final decision of an administrative agency. We conclude that the Court of Appeals erred in affirming the superior court's order, which reversed the final decision of the State Personnel Commission (Commission).

POWELL v. N.C. DEPT. OF TRANSPORTATION

[347 N.C. 614 (1998)]

The State Personnel Act (SPA) governs personnel administration for most employees of state agencies. N.C.G.S. §§ 126-1 to -5 (1995). The SPA provides certain protections for state employees subject to its provisions. However, some state employees are not protected by the SPA. Elected officials, public school superintendents, principals, teachers, and other public school employees, for example, are not subject to most of the provisions of the SPA. N.C.G.S. § 126-5(c2)(1).

In addition, N.C.G.S. § 126-5(d)(1), as it existed at all times relevant to this appeal, permits the Governor to designate up to 1.2% of the total number of full-time positions in the DOT as policymaking exempt. He may also request that additional policymaking positions be designated as exempt. N.C.G.S. § 126-5(d)(2). However, hearing officers, "by whatever title," may not be designated as policymaking exempt. N.C.G.S. § 126-5(d)(7). The statute defines a policymaking position as "a position delegated with the authority to impose the final decision as to a settled course of action to be followed within a department, agency, or division." N.C.G.S. § 126-5(b). No further guidance is given by the statute as to what is or is not a policymaking position, although a procedure is set forth for notification of the affected parties.

An employee whose position is designated policymaking exempt under the SPA is not left without options. The employee has priority consideration for other positions, as vacancies arise, for which he or she is qualified. N.C.G.S. § 126-5(e)(1); *see also N.C. Dep't of Correction v. Hill*, 313 N.C. 481, 485, 329 S.E.2d 377, 379 (1985) (interpreting "priority" in N.C.G.S. § 126-5(e) to mean the right to an automatic offer of a position which becomes available). Further, the statute provides that whether a position was properly designated policymaking exempt shall be investigated by the Office of State Personnel (OSP), and the dispute shall be resolved as provided in article 3 of chapter 150B of the North Carolina General Statutes. N.C.G.S. § 126-5(h). An employee who contends that his or her position was wrongly designated as policymaking exempt is entitled to a contested case hearing under the Administrative Procedure Act. N.C.G.S. § 150B-22 (1995).

Contested case hearings are conducted by the Office of Administrative Hearings (OAH) and are heard by an Administrative Law Judge (ALJ). The ALJ makes a recommendation to the Commission, N.C.G.S. § 150B-34 (1995), and the Commission then

POWELL v. N.C. DEPT. OF TRANSPORTATION

[347 N.C. 614 (1998)]

makes a final decision based upon the record from the OAH, N.C.G.S. § 150B-36 (1995). If the employee or state agency is aggrieved by the Commission's final decision, either party may petition the superior court for judicial review, N.C.G.S. § 150B-43 (1995), as petitioner Powell did in this case. Review is then conducted in accordance with N.C.G.S. § 150B-51(b).

On 25 May 1993, Powell filed a petition for a contested case hearing in the OAH. She also requested that the OSP investigate the propriety of designating her position as policymaking exempt. In an investigation report dated 22 June 1993, the State Personnel Director notified the Secretary of the DOT that the position of Director of the HBP was properly designated as policymaking exempt.

A contested case hearing was held on 2 and 28 February 1994 before Senior Administrative Law Judge Fred G. Morrison, Jr. The ALJ made findings of fact and conclusions of law and entered a recommended decision in which he recommended that the designation of Powell's position as exempt be affirmed. On 20 September 1994, the Commission rendered its final decision, adopting most of the ALJ's findings of fact as follows:

FINDINGS OF FACT

1. Governor James G. Martin, a Republican, served as Governor of North Carolina from January of 1985 to January of 1993. During those years, the position of Director of the Highway Beautification Programs in the Department of Transportation was not exempted from the provisions of the State Personnel Act.

2. Petitioner Betsy Johnson Powell, a Republican, began her employment with the State of North Carolina in February of 1989, at the Employment Security Commission. In August of 1989, she transferred to Respondent [(DOT)] to serve as Director of its Highway Beautification Programs. Her pay grade was 72. This is a professional position requiring minimum supervision for routine work. Review of initiatives or materials developed by the position is necessary. Progress is monitored through the Performance Management System. The individual in this position interfaces with DOT staff at all levels of the organization, local government officials, and the general public.

POWELL v. N.C. DEPT. OF TRANSPORTATION

[347 N.C. 614 (1998)]

3. Ms. Powell's job responsibilities were broken down as follows:

   A. (20%) Managing, organizing and directing the Beautification Programs staff responsibilities including the Adopt-A-Highway Program and support staff responsibilities.

   B. (20%) Implementation of the North Carolina Department of Transportation Recycling Plan. This includes compliance with all federal and state laws now in place or planned for later implementation.

   C. (20%) Training of department personnel in effective means of source reduction, recycling, and reuse of recycled products.

   D. [10%] Keep abreast of federal and state legislation regarding mandate usage of recycled or solid waste materials. Will attend in-state and out-of-state recycling seminars/conventions and litter abatement in order to both develop and implement innovative solutions to recycling issues.

   E. (10%) Maintain records of compliance and success of recycling efforts and prepare reports for federal, state, and litter prevention efforts and department use.

   F. (10%) Liaison to local government beautification councils and community beautification organizations.

   G. (5%) Advise management [of] changes and opportunities in the fields of recycling and litter abatement.

   H. (5%) Liaison to Governor's Highway Beautification Council.

4. The Governor's Highway Beautification Council consists of members appointed by the Governor. During the Martin administration, the wife of former Lieutenant Governor James Gardner, a Republican, served as chairman of this Council.

5. Petitioner, during 1992, took a three months' leave of absence from her position to serve as the Eastern Regional Field Coordinator in the gubernatorial campaign of Lt. Governor Gardner, the Republican general election opponent of Democrat James B. Hunt Jr.

POWELL v. N.C. DEPT. OF TRANSPORTATION

[347 N.C. 614 (1998)]

6. Governor James B. Hunt, Jr., a Democrat, was elected in 1992 and began serving in January of 1993. He had previously served as Governor from January of 1977 until January of 1985, during which time the subject position was not designated as exempt from the provisions of the State Personnel Act.

. . . .

8. Current Transportation officials want this position filled by a political confidant of the Governor primarily because of the public exposure involved. This employee will serve as a surrogate of the Governor and Secretary of Transportation before the various councils and other organizations across North Carolina. The primary purpose will be to promote the Governor's programs as much as possible. A prior Martin video has been replaced by two involving Governor Hunt.

The Commission also made the following additional findings:

ADDITIONAL FINDINGS OF FACT

7. In March of 1993, a team of personnel specialists from the Department of Transportation (hereinafter DOT) Personnel Division, headed by the DOT Personnel Director, reviewed all positions in the DOT to determine those positions that met the definition of policymaking exempt under G.S. 126-5(b). The team of personnel specialists reviewed job descriptions, Office of the State Personnel (hereinafter OSP) job specifications, and organizational charts to make this assessment. All positions in DOT that met the definition of policymaking under G.S. 126-5(b) were recommended to the Secretary's Office for placement on the exempt list. The Senior Deputy Secretary reviewed the positions with the appropriate managers and accepted the recommendations. The list was forwarded to the OSP and returned approved. The Governor designated the positions as policymaking exempt in April 1993. Letters were prepared in accordance with the form letters provided by the OSP and sent to the affected employees with an effective date that afforded the ten-day notice required under G.S. 126-5(g).

8. Effective April 5, 1993, the position of Director of the Highway Beautification Program was designated as policymaking exempt by the Governor in accordance with G.S. 126-5.

9. G.S. 126-5(g) requires that the holders of positions to be designated as exempt be notified in writing ten days prior to the effective date of the designation as to the position holder.

10. The Petitioner was notified of the designation of the position of Director of the Highway Beautification Program as policymaking exempt by letter dated May 3, 1993, with an effective date of May 17, 1993.

11. Effective May 17, 1993, the position of Director of the Highway Beautification Program became designated as policymaking exempt as to the Petitioner.

12. The only statutory rights provided to employees exempted from the provisions of the State Personnel Act [are] the right to an investigation by OSP and the right to resolve a dispute as to the propriety of the exempt designation through a contested case hearing provided for under G.S. 126-5(h).

13. In an investigation report dated June 22, 1993, Ronald G. Penny, State Personnel Director, notified DOT Secretary R. Samuel Hunt of the determination of the OSP that the position of Director of Highway Beautification Program was properly designated as policymaking exempt.

14. As Director of the Highway Beautification Program, the Petitioner headed that subdivision of the DOT and reported first to the Assistant Secretary for Management, then to a Special Assistant to the Secretary of the DOT. After February 1993, the Highway Beautification Program became a Division, headed by the Petitioner, who reported to the Deputy Secretary of Transportation. The duties performed by and the responsibility delegated to the Director of the Highway Beautification Program remained the same through the Petitioner's tenure in that position.

15. As the Director of Highway Beautification Program the Petitioner was delegated with the authority to represent the Department of Transportation, the Secretary of Transportation, the Governor and the Administration across the state and nation in regard to highway beautification and other related issues with respect to the Administration policy. The position holder traveled to meet with various citizen[s'] groups and made speeches about the Governor's position on beautification and other issues and

organized and conducted ceremonies with regard to the Adopt-[A]-Highway program and other public relations type activities. She also solicited persons to work as volunteers and coordinated volunteers on behalf of the Department who were willing to work in the Administration.

16. To these volunteers and other citizens across the state, the Director of the Beautification Program was the eyes and ears of the Governor, the Administration and the department with respect to beautification and other related issues.

The Commission then adopted the ALJ's conclusions of law as follows:

### CONCLUSIONS OF LAW

1. G.S. 126-5(d)(1) allows the Governor to designate certain positions as exempt policymaking [sic]. The purpose is to allow the Governor to make partisan personnel decisions in order to have loyal supporters who will carry out administration policies. G.S. 126-5(c) and (h) allow employees in these positions to challenge such designations. The North Carolina Supreme Court reiterated in Abels v. Renfro Corp., 335 N.C. 209, 218[, 436 S.E.2d 822, 827](1993), that "it would look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." [N.C.] Dept. of Correction v. Gibson, 308 N.C. 131[, 301 S.E.2d 78 (1983)].

2. The Supreme Court of the United States ruled in Branti v. Finkel, 445 U.S. 507, [63 L. Ed. 2d 574 (1980),] that when employees challenge these political decisions, ". . . the ultimate inquiry is not whether the label [']policymaker['] or [']confidential['] fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." It is my conclusion that this standard must be followed when positions are declared policymaking exempt from the State Personnel Act, which has been done in this case. Respondent has shown why a political confidant is a necessary requirement in this position, thus the designation must stand.

The Commission made the following additional conclusions of law:

## ADDITIONAL CONCLUSIONS OF LAW

3. G.S. 126-5(d) provides that the Governor may designate certain positions as policymaking exempt from the protections of the State Personnel Act.

4. G.S. 126-5(b) defines a "policymaking position" as one delegated with the authority to impose the final decision as to a settled course of action to be followed within a department, agency, or division.

5. As the Director of the Highway Beautification Program, the Petitioner was delegated with the authority to impose a final decision as to a settled course of action to be followed with respect to beautification on a statewide basis and to represent the Administration with citizen volunteer groups and other citizens.

6. The Petitioner's position as Director of the Highway Beautification Program was properly designated as policymaking exempt under G.S. 126-5.

The Commission then ordered that the decision of the DOT designating the position of Director of the HBP as policymaking exempt be affirmed.

Powell filed a petition for judicial review in Superior Court, Wake County. On 6 September 1995, Judge Donald W. Stephens reversed the Commission's decision. The DOT appealed to the Court of Appeals, and the Court of Appeals affirmed the superior court's order. On 6 March 1997, this Court allowed the DOT's petition for discretionary review.

Judicial review of a final agency decision is conducted in superior court pursuant to the Administrative Procedure Act. N.C.G.S. § 150B-43. The standard of review is as follows:

[T]he court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

**POWELL v. N.C. DEPT. OF TRANSPORTATION**

[347 N.C. 614 (1998)]

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b) (1995).

The proper standard of review by the superior court depends upon the particular issues presented by the appeal. *ACT-UP Triangle v. Commission for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997); *see also Brooks v. McWhirter Grading Co.*, 303 N.C. 573, 580, 281 S.E.2d 24, 28 (1981). When the issue on appeal is whether the agency's decision was supported by substantial evidence or whether the agency's decision was arbitrary and capricious, the reviewing court must apply the "whole record" test. *ACT-UP Triangle*, 345 N.C. at 706, 483 S.E.2d at 392; *see also Associated Mechanical Contractors v. Payne*, 342 N.C. 825, 832, 467 S.E.2d 398, 401 (1996). A "whole record" review "does not allow the reviewing court to replace the [agency's] judgment as between two reasonably conflicting views," but rather requires the court to determine the substantiality of the evidence by taking all the evidence, both supporting and conflicting, into account. *Associated Mechanical Contractors*, 342 N.C. at 832, 467 S.E.2d at 401.

In this case, we are concerned with whether the Commission's conclusion that petitioner's position was vested with the authority to impose a final decision as to a settled course of action to be followed within a department, agency, or division, and that it was therefore policymaking exempt, was unsupported by substantial evidence in view of the entire record.

In this Court, the DOT argues that the Court of Appeals erred by affirming the superior court's decision reversing the Commission's finding that Powell's position was policymaking exempt. The Court of Appeals first said that a key issue was whether, at the time Powell's position was designated as policymaking exempt, the HBP was a division of the DOT. While we agree with the Court of Appeals that HBP was not a division of the DOT, we believe that the Court of Appeals focused on the wrong issue. The issue is not whether the HBP was a division of the DOT, but rather whether the position of Director of the

HBP carried with it the authority to impose the final decision as to a settled course of action to be followed within a department, agency, or division.

The Court of Appeals correctly identified the second issue as whether there was substantial record evidence to support the Commission's conclusion that the Director of the HBP had the authority to impose the final decision as to a settled course of action to be followed within a department, agency, or division. The Court of Appeals concluded that there was no substantial evidence to support the conclusion that this position carried decision-making authority of such scope as would enable Powell to make or impact policies on a department-wide, agency-wide, or division-wide level at the DOT. In determining whether the Court of Appeals is correct on this issue, we must review the evidence that was before the Commission, whose final agency decision is being reviewed. The Commission is the fact-finding agency, whose decision must be upheld if supported by the whole record.

In two days of hearings, evidence was presented in the form of affidavits, job descriptions, and personal testimony tending to show that the position of Director of the HBP carried with it responsibility for the HBP and the Beautification Program staff, including the Adopt-A-Highway Program. The Director of the HBP served as the liaison to the Governor's Highway Beautification Council. Decisions made by the Director of the HBP could structure a major goal of the DOT and could establish a policy platform to guide programmatic efforts within the entire DOT. The Director of the HBP was held accountable for independent progress under broadly construed goals and received minimal supervision. After a departmental reorganization in February 1993, the Director of the HBP reported directly to the Deputy Secretary of Highways. The duties performed by and the responsibilities delegated to the Director of the HBP remained the same throughout Powell's tenure in that position. The position of Director of the HBP was the only such position in state government.

The evidence presented was capable of two reasonably conflicting views: (1) that the position carried with it the requisite authority, and (2) that it did not. The Commission made detailed findings of fact and conclusions of law as fully set forth in this opinion. In the Commission's judgment, the evidence showed that the position carried with it the authority to impose a final decision as to a settled course of action to be followed within a department, agency, or divi-

POWELL v. N.C. DEPT. OF TRANSPORTATION

[347 N.C. 614 (1998)]

sion. We believe the Commission has taken a reasonable view of the evidence. The whole record test does not permit the reviewing court to substitute its judgment for the Commission's judgment as between two reasonably conflicting views. After reviewing both the supporting and conflicting evidence in the record, we conclude that substantial evidence in the whole record supports the Commission's conclusion that the DOT properly designated Powell's position as policymaking exempt pursuant to the statute.

[2] The United States Supreme Court has held that certain patronage dismissals violate the First Amendment to the United States Constitution. *See Branti v. Finkel*, 445 U.S. 507, 63 L. E. 2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 49 L. Ed. 2d 547 (1976). The Fourth Circuit has held that the *Branti-Elrod* analysis should be applied not only to patronage dismissals, but also to those patronage practices "that can be determined to be the substantial equivalent of dismissal." *Delong v. United States*, 621 F.2d 618, 623-24 (4th Cir. 1980); *see also Stott v. Haworth*, 916 F.2d 134 (4th Cir. 1990). Powell argues that the reclassification of the position of Director of the HBP as policymaking exempt constitutes, in and of itself, the substantial equivalent of an impermissible patronage dismissal. She also argues that the fact that she was notified of the termination of her employment eighteen days after she was notified of the reclassification of the position means that this course of action was designed to bring about the termination of her employment. Assuming without deciding that Powell has properly raised the *Branti-Elrod* issue, the evidence clearly supports the ALJ's conclusion, adopted by the Commission, that the DOT has shown why a political confidant is necessary for the effective performance of this position. As found by the Commission, the Director of the HBP was the eyes and ears of the Governor, the Administration, and the DOT with respect to beautification and related issues. Clearly an elected official is entitled to decide, even on a partisan and political basis, who will be his or her spokesperson in carrying out the goals of the Highway Beautification Program.

We conclude that there was substantial evidence to support the designation of the position of Director of the Highway Beautification Program as policymaking exempt under N.C.G.S. § 126-5. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.

Justice ORR dissenting.

Superior Court Judge Donald W. Stephens, in reviewing the "whole record" in this case, concluded that

> there is no competent evidence to support a conclusion that this position was one vested with authority to impose the final decision on any department-wide course of action or many [sic] agency-wide course of action or on any division-wide course of action. The Petitioner's position did not meet any legal definition of policymaking under G.S. § 126-5(b) and, as such, the reclassification to exempt status for this position was contrary to law.

Similarly, a unanimous Court of Appeals panel, in an opinion written by Judge John B. Lewis, Jr., concluded that "[t]here is no substantial evidence to support the conclusion that she [Ms. Powell] had decision-making authority of such scope as would enable her to make or impact policies on a department-wide, agency-wide, or decision-wide level at the DOT." Accordingly, the Court of Appeals affirmed the trial court's ruling.

Having carefully reviewed the transcripts in this case, as well as the Administrative Law Judge's (ALJ) and Personnel Commission's findings of fact, I agree with the conclusion of the trial court and Court of Appeals. There is no substantial evidence to support the conclusion that Ms. Powell's position as Director of the Highway Beautification Program falls within the definition of "policymaking." There is simply no evidence to permit its redesignation to "exempt" after years of being a nonexempt position vested with the protections given to state employees under the State Personnel Act. N.C.G.S. ch. 126 (1995).

In addition, the majority points to no specific evidence that would allow a conclusion that Ms. Powell could "impose the final decision as to a settled course of action to be followed within a department, agency, or division." N.C.G.S. § 126-5(b). Instead, the majority focuses on the Personnel Commission's findings of fact. The Personnel Commission adopted the ALJ's findings numbered one through six and eight, but specifically declined to adopt number seven. The Personnel Commission also made additional findings on its own. A close examination shows that absolutely none of these findings specifically address the critical factor in this case—the petitioner's ability to impose a final decision. While the ALJ's findings

include a general description of the position's duties, the Personnel Commission's findings focus on the fact that "[t]o . . . volunteers and other citizens across the state, the Director of the Beautification Program was the eyes and ears of the Governor, the Administration and the department with respect to beautification and other related issues." Being "the eyes and ears of the Governor," or of anyone else in state government, does not equate with the statutory test for policymaking so as to warrant exempting this position.

The majority states that "the evidence was capable of two reasonably conflicting views." I agree with the trial court's and the Court of Appeals' conclusion that there is a total lack of substantial evidence to support the State's position in this case. Therefore, I respectfully dissent.

Justice Lake joins in this dissenting opinion.